UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-1503

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OMAR BRITO-HERNANDEZ,

Defendant-Appellant.

_____


Appeal from the United States District Court
for the Northern District of Texas

_____

(July 9, 1993)


Before GOLDBERG, HIGGINBOTHAM, and DAVIS Circuit Judges.

GOLDBERG, Circuit Judge:

Following a jury trial, Omar Brito-Hernandez was convicted for distributing, and conspiring to distribute, five or more kilograms of cocaine in violation of 21 U.S.C. § 841. Brito appeals, arguing that the trial court abused its discretion in permitting the government to impeach Brito with evidence of Brito's prior conviction in the Republic of Mexico. We affirm the district court, finding that any error committed by the lower court in

1

permitting the impeachment was harmless in light of the overwhelming evidence against Brito.

FACTS

On October 28, 1990, an informant for the Drug Enforcement Administration ("DEA"), Robert Stripland, and an undercover Special Agent for the DEA, Timothy Sellers, met with Ismael Corral, Roberto Fragoso, and Herlinda Domingues, in the La Quinta Hotel in Lubbock, Texas, for the purpose of negotiating a cocaine sale. After negotiating the deal, Corral telephoned the supplier, "El Tio," and arranged to pick up nine kilograms of cocaine in Odessa, Texas, the next day.

The next morning Corral drove Stripland to Odessa for the purpose of obtaining the cocaine. In Odessa, Corral and Stripland were met by the appellant Omar Brito-Hernandez. Corral got into the car driven by Brito, drove away, and later returned to his client Stripland with a backpack containing seven kilograms of cocaine and stated, "this is what he gave me."

Brito was subsequently arrested on October 30, 1991, at his residence in Odessa. A search of Brito's house revealed several papers connecting Brito to the drug deal negotiated in the La Quinta Hotel. Documents found on the dresser in Brito's residence had El-Tio's name and phone number on them, and the phone number of the La Quinta Hotel was written on an envelope found in Brito's bathroom dresser. Further evidence was later discovered connecting Brito to the La Quinta drug transaction, including telephone

2

records from El Tio's apartment which establish that on the night of the drug deal in the La Quinta Hotel, several calls were made from El Tio's apartment to the La Quinta Hotel and to Brito's residence in Odessa.

On the morning of October 31, 1991, Brito orally confessed to detective Duarte of the Odessa Police Department. In his confession, Brito admitted to storing and distributing cocaine obtained from El Tio, and to his involvement in the drug transaction negotiated in the La Quinta Hotel. On November 1, 1991, Brito made a second oral confession to Special Agent Sellers repeating the same details that he had earlier confessed to Duarte.

Four days prior to the commencement of trial the government filed an Enhancement Information, alleging that Brito had been previously convicted of a felony drug offense in Mexico. On the morning before jury selection, Brito requested a continuance, and a ruling in limine precluding the government from impeaching Brito on the basis of the prior Mexican conviction. The district court denied both of Brito's motions.

At trial, Brito testified on his own behalf. During the government's cross examination of Brito, the government introduced evidence regarding Brito's Mexican conviction for the purpose of impeachment. On February 13, 1992, the jury found Brito guilty as charged.

After the conviction, but prior to sentencing, Brito filed a supplemental response to the government's Enhancement Information, claiming that by an order of the Mexican court, entered on April

29, 1992, his Mexican conviction was indefinitely suspended. Because this new information raised doubt as to the validity and finality of Brito's Mexican conviction, the government withdrew its motion for sentence enhancement. Brito was sentenced to 151 months in prison and a five-year term of supervised release.

ANALYSIS

Appellant argues that the trial court abused its discretion in admitting evidence regarding Brito's prior Mexican conviction for the purpose of impeachment. Brito claims that the Mexican conviction is "constitutionally invalid," and thus it could not have been properly used to impeach his credibility. It is well established that "the use of constitutionally invalid prior convictions for impeachment purposes is error of constitutional dimension." Zilka v. Estelle, 529 F.2d 388, 389 (5th Cir. 1976) cert. den. 429 U.S. 981 (1976).

Brito alleges that the Mexican conviction is constitutionally invalid on two grounds. First, the Mexican legal system did not provide Brito the right to a trial by jury. Second, Brito was convicted by an appellate court that reversed a lower court's acquittal of Brito. Hence, Brito's conviction was obtained in violation of the United States Constitution's prohibition on double jeopardy.[1]

_____

[1] In addition to infirmities under the United States Constitution, actions regarding the Mexican conviction taken by the Mexican government, and the Mexican judiciary, subsequent to Brito's conviction put into serious doubt the status and validity of that conviction under the laws of Mexico. Brito was

4

We have found no circuit court decision addressing the validity of a foreign conviction obtained in violation of double jeopardy, and only one decision addressing the validity of a foreign conviction obtained without the right to a jury. In United States v. Wilson, 556 F.2d 1177 (4th Cir.) cert. den. 434 U.S. 986 (1977), the Fourth Circuit upheld the impeachment of a defendant on the basis of a prior conviction obtained in West Germany. The appellant in Wilson argued that the German conviction was constitutionally invalid because it was obtained without giving the defendant the right to a jury trial. The Wilson court rejected the appellant's argument, holding that "a jury trial is not essential for fairness in every system of justice," and thus that "the defendant has not shown that the German legal system lacks the procedural protection necessary for fundamental fairness." Id. at 1178.

We need not reach, and we express no opinion on, the question of whether a foreign conviction obtained in violation of the right to be free from double jeopardy, or the right to a trial by a jury, may be used to impeach a defendant. We find that even if the introduction of the Brito's prior Mexican conviction was a constitutional error, this error was harmless beyond a reasonable doubt.

The Supreme Court, in Chapman v. California, instructed that

originally sentenced for seven years but was released after serving a term of seven months. Brito was allegedly told upon his early release that "everything was an error." The Mexican government then issued an order "suspending" Brito's conviction.

5

"before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 87 S.Ct. 824, 828 (1967). Applying the Chapman standard in Zilka, we explained that a conviction must stand "if, upon a reading of the trial record, the court is firmly convinced that the evidence of petitioner's guilt was overwhelming and that the jury would have reached the same result without the tainted evidence." 529 F.2d at 392.

The evidence of Brito's guilt is overwhelming. Two different government witnesses, detective Duarte of the Odessa Police Department and DEA Special Agent Sellers, testified that Brito orally confessed to storing and distributing cocaine obtained from his supplier El Tio, and to his involvement in the drug deal that was negotiated at the La Quinta Hotel. Brito's confessions were consistent, specific, and corroborated by additional evidence. Brito confessed to both Duarte and Sellers that he stored the cocaine procured from El Tio at a ranch house, and a search of the ranch house revealed a one kilogram brick of cocaine. Moreover, documents found in Brito's house directly linked Brito to El Tio and to the drug deal negotiated at the La Quinta Hotel. Documents in Brito's residence contained both El Tio's name and phone number, and the phone number of the La Quinta Hotel where the drug transaction was completed. Also establishing Brito's connection to the drug deal was the testimony of Brito's co-defendants, and the telephone records from El Tio's apartment showing that several calls were made from El Tio's apartment to the La Quinta Hotel and

6

to Brito's residence in Odessa. Given the weight of the evidence against Brito, it is beyond reasonable doubt that the jury's verdict would not have been different if the impeaching evidence had been excluded. See United States v. Williams, 957 F.2d 1238, 1244 (5th Cir. 1992).

Appellant makes two additional arguments on appeal. Appellant claims that the trial court abused its discretion in not granting Brito's motion for a continuance to allow Brito's attorney time to investigate the status of the Mexican conviction. "[T]he decision to grant a continuance lies within the sound discretion of the trial judge and is subject to reversal only for an abuse of that discretion." United States v. Hopkins, 916 F.2d 207, 217 (5th Cir. 1990). Moreover, "a defendant can obtain reversal only by demonstrating serious prejudice." United States v. Mitchell, 777 F.2d 248, 255 (5th Cir.) cert. den. 475 U.S. 1096 (1986). Brito asserts that a continuance would have enabled him to present evidence regarding the questionable status of the Mexican conviction. However, the order suspending Brito's Mexican conviction was not issued until April 29, 1992, and the Brito's trial was scheduled to commence on February 10, 1992. As the Mexican court issued its order two and half months after the start of the instant trial, even if a reasonable continuance had been granted Brito would not have been able to discover the order prior to trial. We find nothing in the record to support Brito's contention that the trial judge abused its discretion. Appellant also argues that the trial court erred in failing to grant Brito's

motion for a mistrial after a government witness testified that a photograph used to identify Brito came from the Odessa Police Department. The photograph itself was not introduced into evidence nor was it exhibited to the jury. The court instructed the jury to disregard the testimony regarding the source of the photograph. The district court did not abuse its discretion in denying appellant's motion for a mistrial.

CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

8