IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 93-9007
Summary Calendar
_____

UNITED STATES OF AMERICA,                          Plaintiff-Appellee,

versus

KERRY DEWAYNE LAURY,                               Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
_____

(March 24, 1995)

Before SMITH, EMILIO M. GARZA, and PARKER, Circuit Judges.

PER CURIAM:

Defendant-Appellant Kerry Dewayne Laury ("Laury") appeals his
conviction and sentence on five counts of obstruction of commerce
by robbery in violation of 18 U.S.C. § 1951(a) and 2 ("Hobbs Act"),
and five counts of using and carrying a firearm during a crime of
violence in violation of 18 U.S.C. § 924(c)(1) and (2).  We affirm.

BACKGROUND

On November 1, 1992, Laury was arrested and charged under
Texas law for armed robbery of a Minyard's grocery store in Dallas.
On January 6, 1993, a federal grand jury returned an indictment,
charging Laury and two co-defendants with two counts of violating
the Hobbs Act by robbing grocery stores, and two counts of using a
firearm during and in relation to the robberies.  The indictment
was superseded several times, eventually charging six separate

robberies as Hobbs Act violations, and six corresponding use-of-a-firearm counts.  The case was tried before a jury, and the jury found Laury guilty of ten out of the twelve offenses charged.  The trial court subsequently sentenced Laury to a total of 1071 months' imprisonment, three years supervised release, $13,104.00 in restitution, and a $500.00 special assessment.

## DOUBLE JEOPARDY

Laury argues that his convictions under §§ 924(c)(1) and 1951 for a single robbery violate the Double Jeopardy Clause.  Laury, however, failed to raise this issue in the district court.  Under FED. R. CRIM. P. 52(b), we may correct forfeited errors only when the appellant shows the following factors: (1) there is an error; (2) that is clear or obvious; and (3) that affects his substantial rights.[1]  If these factors are established, the decision to correct the forfeited error is within the sound discretion of the Court, and will not be exercised unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[2]

We find that Laury cannot demonstrate error, plain or otherwise.  This Court has held that multiple convictions under §§ 924(c)(1) and 1951 for a single robbery do not violate double jeopardy. *United States v. Martinez*, 28 F.3d 444, 445-46 (5th Cir.), *cert. denied*, ___U.S.___, 115 S.Ct. 281, 130 L.Ed.2d 197

---

[1] *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (*en banc*) (citing *United States v. Olano*, ___U.S.___, 113 S.Ct. 1770, 1776-79, 123 L.Ed.2d 508 (1993)), *cert. denied* 63 U.S.L.W. 3643 (U.S. Feb. 27, 1995) (No. 94-7792).

[2] *Olano*, 113 S.Ct. at 1778.

2

(1994).  To the extent that Laury argues that *United States v. Dixon*[3] overrules *Missouri v. Hunter*[4], we find the argument irrelevant to the issue before us in this case.  In *Hunter*, the Supreme Court assumed that the multiple convictions failed the *Blockburger*[5] "same elements" test, but determined that if there was a clear indication of legislative intent to impose cumulative punishments, the multiple punishments did not violate double jeopardy.[6]  In *Martinez*, the Court determined that multiple convictions for §§ 924(c)(1) and 1951 did not violate the *Blockburger* test, and therefore *Hunter* was not controlling.[7]

## GOVERNMENTAL MISCONDUCT

Laury argues that the district court improperly denied his motion to dismiss the indictment.  He contends that following his arrest on federal charges in January 1993, FBI Agent Paul Shannon ("Agent Shannon") questioned him in violation of his Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel, and that this conduct constituted outrageous governmental misconduct which could be remedied only by dismissing the indictment.  Laury argues that suppression of the statement obtained as a result of Agent Shannon's interrogation was

---

[3]   ___U.S.___, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

[4]   459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

[5]   *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

[6]   459 U.S. at 368-69.

[7]   28 F.3d at 446.

3

an insufficient remedy because the Government could use the statement to impeach him if he testified.

Laury was initially arrested on November 1, 1992, and charged in state court with two counts of robbery involving the October 4 and November 1, 1992 robberies. On November 4, 1992, Agent Shannon interrogated Laury, Gary Watson ("Watson") and Derrick Laury, Laury's two co-defendants. On November 11, 1992, attorney Martin Smith ("Smith") was hired to represent Laury on the state charges, who continued to represent Laury until January 20, 1993, when the state charges were dropped.

On January 14, 1993, Laury was arrested by Agent Shannon and charged in federal court with two Hobbs Acts violations and two counts of using and carrying a firearm in relation to a crime of violence, arising from the October 4 and November 1, 1992 robberies. At the time of Laury's arrest, Agent Shannon gave Laury his *Miranda* warnings and Laury verbally waived his right to counsel. Agent Shannon knew that Laury was on bond from the state charges and that he was represented by counsel on those charges, but he wanted to question Laury about his involvement in the additional robberies. Assistant United States attorney Paul Macaluso ("Macaluso") was not informed, nor did he instruct anyone to interrogate Laury at the time of his arrest.

Laury moved to dismiss the indictment arguing that Agent Shannon's conduct violated his Fifth and Sixth Amendment rights to counsel. Following a hearing, the district court found that Macaluso did not act improperly, but that Agent Shannon violated

4

Laury's Sixth Amendment rights. The district court determined that the appropriate remedy was to suppress the statement.

*Fifth Amendment*

The Fifth Amendment guarantees a defendant the right to counsel during a custodial interrogation.[8] However, the defendant must expressly invoke his Fifth Amendment right. Laury orally waived his Fifth Amendment right to counsel, and his Sixth Amendment right to counsel on the state charges was insufficient to invoke his Fifth Amendment right on the federal charges.[9]

*Sixth Amendment*

The Sixth Amendment right to counsel attaches upon the initiation of judicial proceedings.[10] Because Laury was under indictment at the time of his arrest, his Sixth Amendment right to counsel had attached to the charged offenses.[11] Once the Sixth Amendment right to counsel attaches, law enforcement officials may

---

[8] *United States v. Carpenter*, 963 F.2d 736, 739 (5th Cir.), *cert. denied*, ___U.S.___, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992).

[9] *Carpenter*, 963 F.2d at 739-40.

[10] *United States v. Cruz*, 22 F.3d 96, 98 n.7 (5th Cir.), *cert. denied*, ___U.S.___, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994).

[11] The Sixth Amendment applies only to the specific charged offense. *Carpenter*, 963 F.2d at 739. If however, the charges to which the Sixth Amendment right has been invoked and the new charges are "inextricably intertwined," the Sixth Amendment right may extend to the new charges. *Id.* at 740. *See United States v. Cooper*, 949 F.2d 737, 743-44 (5th Cir. 1991), *cert. denied*, ___U.S.___, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992). In this case, the federal charges and state charges were identical, and therefore the invocation of the Sixth Amendment right on the state charges was sufficient to invoke the right on the federal charges.

5

not initiate interviews in connection with the charged offense.[12]

"Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not necessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). If a Sixth Amendment violation occurs, generally the remedy is to suppress the evidence, not to dismiss the indictment. *Id.* at 365. In the absence of demonstrable prejudice, or a substantial threat of prejudice, dismissal of the indictment is plainly inappropriate, even if the violation was deliberate.[13]

Laury argues that the suppression of the January 14, 1993 statement was insufficient to remedy the Sixth Amendment violation because the Government would have been able to use the uncounseled statement to impeach his testimony if he had taken the stand in his defense. It is well established that the prosecution may use a statement obtained in violation of the Sixth Amendment to impeach a defendant's false or inconsistent testimony.[14] We find Laury cannot demonstrate prejudice warranting dismissal because the Government would have been able to impeach him with the statement.

---

[12] *Carpenter*, 963 F.2d at 734.

[13] *See United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991), *cert. denied*, ___U.S.___, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992).

[14] *Bradford v. Whitley*, 953 F.2d 1008, 1010-11 (5th Cir.), *cert. denied*, ___U.S.___, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992).

CONTINUANCE

In a related argument, Laury contends that the district court abused its discretion by denying his motion for a continuance. Laury argues that the continuance was necessary to secure the presence of Smith, his state attorney, and Fred Talkington ("Talkington"), Derrick Laury's attorney, to establish the continuing harm caused by Agent Shannon's misconduct.

We review the district court's denial of a motion for a continuance for an abuse of discretion. *United States v. Brito-Hernandez*, 996 F.2d 80, 83 (5th Cir. 1993). To obtain a reversal the defendant must demonstrate "serious prejudice." *Id.*

Laury contends that Smith would have established that Macaluso knew Laury was represented by counsel on the state charges, and that Talkington would have testified that Derrick Laury pleaded guilty at least in part because of Laury's January 14, 1993 statement. We find that Laury cannot demonstrate "serious prejudice" because Smith was not present to testify. Agent Shannon, who conducted the interrogation, testified that he knew Laury was represented by counsel, and the district court determined that a Sixth Amendment violation occurred and suppressed the statement. Smith's testimony would only have been cumulative of the evidence presented and would not have altered the result.

Cecil A. Ray ("Ray"), counsel for Watson, testified that Watson's decision to plead guilty was not motivated by Laury's statements. Ray stated that he had access to all of the defendants' written statements, including Derrick Laury's

7

inculpatory statements, and was unaware that Laury had made an oral statement on January 14, 1993. There is no evidence in the record to support Laury's contention that the Government told Derrick Laury, but not Watson, about Laury's statements, or that Derrick Laury would have been more influenced by Laury's statements than would Watson. Additionally, Watson, who was not influenced by Laury's statements, also testified against Laury.

## SUFFICIENCY OF THE EVIDENCE

Laury argues that there is insufficient evidence to support his convictions in counts 4, 6, and 8. He contends that the evidence is insufficient to establish that he knew that his codefendants were carrying a firearm during the commission of those robberies.

Laury failed to move for a judgment of acquittal at the close of all the evidence, and neither the pleadings in the record nor the docket sheet reflect that any post-trial motions for acquittal were filed by Laury. Therefore, the sufficiency-of-the-evidence claim is reviewable only to determine whether there was a manifest miscarriage of justice.[15] *United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir.), *cert. denied*, 500 U.S. 926, 111 S.Ct. 2038, 114 L.Ed.2d

---

[15] In a recent decision, this Court questioned whether the "miscarriage of justice" standard is distinguishable from the "sufficiency of evidence" standard employed if a defendant does make a motion for acquittal at the conclusion of the trial. *See United States v. Pennington*, 20 F.3d 593, 597 n.1 (5th Cir. 1994). However, because only the Court sitting *en banc* can reverse precedent, Laury's insufficiency claim must be reviewed under the "miscarriage of justice" standard. *See United States v. Sias*, No. 93-5475, at 3-4 & n.1 (5th Cir. Sept. 30, 1994) (unpublished).

122 (1991). "Such a miscarriage of justice would exist only if the record is devoid of evidence pointing to guilt, or . . . because the evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Pierre*, 958 F.2d 1304, 1310 (5th Cir.) (*en banc*) (internal quotations and citations omitted), *cert. denied*, ___U.S.___, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

In counts 4, 6, and 8, Laury was convicted of aiding and abetting the use and carrying of a firearm during the October 3, 4, and 18, 1992 robberies. To establish an offense under § 924(c)(1), the Government must prove: "(1) that the defendant knowingly used or carried a firearm, and (2) the use or carrying of the firearm occurred during and in relation to a crime of violence." *United States v. Harris*, 25 F.3d 1275, 1279 (5th Cir.), *cert. denied*, ___U.S.___, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994). To prove aiding and abetting the Government must show that Laury "(1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by action to make the venture succeed." *Id.*

Derrick Laury testified that before the October 3, 1992 robbery Laury told him (Derrick Laury) that he did not have to worry about a gun because Watson would do everything. Laury gave a written statement in which he admitted knowing that Watson was carrying a firearm during the October 4, 1992 robbery. Watson and Derrick Laury used a weapon during each robbery, and Watson testified that all of the robberies were conducted in the same way. From this evidence the jury could infer that Laury knew that Watson

9

and Derrick Laury had a firearm during the robberies.  Therefore, we find the evidence is sufficient to support his convictions on counts 4, 6, and 8.

## JURY INSTRUCTIONS

Laury also argues that the district court improperly refused to give six requested jury instructions.  The trial judge has substantial latitude in formulating the jury charge, and we review the district court's refusal to give a requested jury instruction for an abuse of discretion. *United States v. Aggarwal*, 17 F.3d 737, 745 (5th Cir. 1994).  The Court may reverse only if the requested instruction "(1) is substantially correct; (2) was not substantially covered in the charge actually given; and (3) concerns an important point such that failure to give it seriously impaired the defendant's ability to effectively present a given defense." *Id.*  We will reverse only if the defendant was improperly denied an opportunity to convey his case to the jury.[16]

Laury introduced alibi evidence, and he requested that the district court give an requested jury instruction.  The district court did not give the alibi instruction, but did instruct the jury that the jury was required to weigh the evidence and judge the credibility of the witnesses.  Laury emphasized the alibi evidence during closing argument.  Although argument alone cannot suffice for jury instruction, a determination of the adequacy of the charge

---

[16]  *United States v. Hudson*, 982 F.2d 160, 162 (5th Cir.), *cert. denied*, ___U.S.___, 114 S.Ct. 100, 126 L.Ed.2d 67 (1993).

must be made in the context of the full trial.[17]  The general jury instruction, taken with Laury's closing argument, was sufficient to place the alibi defense before the jury, and the district court did not commit reversible error by failing to give the requested instruction.

Laury also requested that the district court instruct the jury on substance abuse by a witness.  Laury introduced evidence at trial that Watson had a substance abuse problem.  Although the district court did not give the requested instruction, once again the jury was given the general credibility/weight of the evidence instruction, and Laury was able to argue the point to the jury.  The argument was presented to the jury, and Laury cannot demonstrate reversible error.[18]

Laury requested jury instructions on impeachment by prior inconsistent statements; co-defendant plea agreements; single defendant, multiple counts; and aiding and abetting.[19]  Although the district court did not use the language requested, the court did instruct the jury on each of these theories.  Therefore, we find that the requested instructions were "substantially covered" in the

[17]  *United States v. Ivey*, 949 F.2d 759, 765 (5th Cir. 1991), *cert. denied*, ___U.S.___, 113 S.Ct. 64, 121 L.Ed.2d 32 (1992).

[18]  *See Hudson*, 982 F.2d at 162; *Ivey*, 949 F.2d at 765.

[19]  The Government argues that this Court should review the aiding and abetting instruction for plain error because Laury did not object to the instruction in the district court.  However, the district court stated for the record that Laury objected to the charge insofar as it was different from his requested charge. His objection was preserved for appeal.

11

charge and there was no reversible error.

CONCLUSION

For the reasons articulated above, Laury's conviction and sentence are AFFIRMED.