65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio JOHNSON, Defendant-Appellant.
 No. 94-2459.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1995.
 
 Before: RYAN, BATCHELDER, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 A jury in the U.S. District Court for the Eastern District of Michigan found Antonio Johnson guilty of two robberies of the same bank, and convicted him of bank robbery in violation of 18 U.S.C. Sec. 2113(a) for the first bank robbery and armed bank robbery in violation of 18 U.S.C. Sec. 2113(a), (d) for the second robbery. Johnson appeals the district court's refusal to give his requested jury instruction on impeachment of witnesses by prior inconsistent statements. Because the district court's instructions included information on inconsistent statements, and because any error in failing to give the requested instruction would have been harmless, this court affirms the convictions.
 
 I.
 
 2
 The Huntington Bank in Clinton Township, Michigan, was robbed on July 8, 1994, and again on July 12, 1994. During the July 8 incident, the robber handed teller-trainee Jennifer Jungwirth a note that said, "No noise. I only want the money and I do have a gun." Jungwirth gave the robber $2,045, including a red "dye pack" that exploded after the robber left the bank. During the July 12 robbery, the robber brandished a gun at Jungwirth and teller Jennifer Corbin. He demanded money and warned Jungwirth not to give him a dye pack "this time." The tellers gave him $5,532.
 
 
 3
 The government's evidence at trial included videotapes and photographs taken by the bank surveillance camera, a fingerprint analysis of the July 8 demand note, and eyewitness identifications by bank employees Jungwirth, Corbin, and Phyllis Smith. At trial, all three employees identified Johnson as the bank robber. However, their trial testimony differed in limited ways from earlier statements that they had given to law enforcement officials.
 
 
 4
 On direct examination, Jungwirth described what the robber had been wearing on both occasions and testified that she was sure it was the same person. On cross-examination, defense counsel pointed out that Jungwirth's July 12 statement to law enforcement officials indicated that she had noticed age spots on the robber's face, a feature she had not mentioned on July 8 or on direct. Corbin testified on direct examination that she saw the defendant walk into the bank as a customer on July 8, but during cross-examination it appeared that her statement to law enforcement officials only described seeing the robber run out of the bank. Phyllis Smith, also a teller at the bank, testified that the July 8 robber looked familiar. On cross-examination, Smith admitted that she had told the FBI that the July 8 robber was a regular customer, but that the July 12 robber was not.
 
 
 5
 At the close of trial, the district judge gave the jury the following instructions:
 
 
 6
 Now, Ladies and Gentlemen of the Jury, the credibility of witnesses is very important, and you are the sole judges of the credibility of witnesses and the weight and value to be given their testimony.
 
 
 7
 In weighing the witness's testimony, you may take into consideration his or her bias, interest, or prejudice, if any. His or her relationship to the parties of the case, if any. The probability or improbability of testimony given by a witness.
 
 
 8
 And you may consider all other facts and circumstances in evidence which, in your judgment, would add or detract from the credibility or weight to be given to a witness' testimony.
 
 
 9
 In weighing the testimony of a witness you have the right to consider his or her candor or frankness, his or her manner or bearing while testifying, the means and opportunity the witness has knowledge of the facts about which he or she testified, the consistency of the testimony with other known facts in the case.
 
 
 10
 And you may consider all other matters that tend to impress upon your mind the truth or untruth of a witness' testimony.
 
 
 11
 If there is a conflict in the testimony of a witness, it's your duty to say where the truth lies.
 
 
 12
 You are not bound to accept as true statements of witnesses where they are unreasonable or inconsistent with each other or with the known facts of the case.
 
 
 13
 You should not, however, reject the testimony of any witness without reason.
 
 
 14
 Now, you have heard the testimony of Jennifer Jungwirth, Phyllis Smith, and Jennifer Corbin who have identified the Defendant as a person who robbed the bank.
 
 
 15
 You should carefully consider whether these identifications are accurate and reliable.
 
 
 16
 Trial Tr. at 217-18 (emphasis added). The judge then denied the defense's request for an instruction regarding impeachment by prior inconsistent statements, finding that the thorough instruction on credibility made any further impeachment instruction unnecessary.
 
 
 17
 On appeal, Johnson contends that the district court should have given pattern jury instruction number 7.04, which provides:
 
 
 18
 (1) You have heard the testimony of _____. You have also heard that before this trial he made a statement that may be different from his testimony here in court.
 
 
 19
 (2) This earlier statement was brought to your attention only to help you decide how believable his testimony was. You cannot use it as proof of anything else. You can only use it as one way of evaluating his testimony here in court.
 
 
 20
 U.S. Sixth Circuit District Judges Association, Pattern Criminal Jury Instructions 145 (1991). Johnson's counsel did not mention this specific pattern jury instruction in registering her objection to the district court's instructions, but simply stated, "We request an instruction on impeachment by prior inconsistent statement." Trial Tr. at 220.
 
 II.
 
 21
 The "abuse of discretion" standard governs review of a trial court's refusal to give a requested jury instruction. United States v. Frost, 914 F.2d 756, 764-67 (6th Cir.1990). The appellate court must assess the jury charge as a whole to determine whether the instructions given fairly and adequately submit the issues and the law to the jury; the appeals court should reverse only if three conditions are met: (1) the omitted instruction is a correct statement of the law, (2) the omitted instruction is not substantially covered by the instructions actually given, and (3) the omission of the instruction impairs the defendant's theory of the case. United States v. Carr, 5 F.3d 986, 992 (6th Cir.1993); United States v. Williams, 952 F.2d 1504, 1512 (6th Cir.1991); United States v. Sassak, 881 F.2d 276, 278 (6th Cir.1989).
 
 
 22
 The instruction that Johnson requested is clearly a correct statement of the law, but the instructions regarding credibility that the district court gave adequately covered the subject of impeachment by prior inconsistent statement. The charge given expressly stated that the jury did not have to credit statements of witnesses that were "inconsistent with each other." See Carr, 5 F.3d at 992 (holding that specific instruction on questionable credibility of defendants' accomplices was not necessary in light of general instruction on credibility determinations). The district court's instruction, unlike the pattern instruction, did not inform the jury that prior inconsistent statements were not to be used as substantive evidence. However, here the use of prior inconsistent statements as substantive evidence would only have been favorable to Johnson's "mistaken identity" theory, and so this omission could not have harmed the defense. Nor did the failure to give the requested instruction impair Johnson's theory of the case. His counsel was still able to present the mistaken identity theory to the jury, and in fact did make such a presentation during her closing argument. See United States v. Laury, 49 F.3d 145, 152 (5th Cir.1995) (general jury instruction coupled with closing argument presented defendant's alibi theory to jury, making specific alibi instruction unnecessary). Hence, under the test set forth in Carr, the refusal to give the requested instruction was not reversible error.
 
 
 23
 Furthermore, any error in failing to give the requested instruction would have been harmless in light of the relatively minor nature of the inconsistencies and the overwhelming evidence of Johnson's guilt. See United States v. McGuire, 744 F.2d 1197, 1206-07 (6th Cir.1984) (finding erroneous jury instruction harmless in light of strong evidence of guilt), cert. denied, 471 U.S. 1004 (1985). Smith stated to the FBI that the July 8 robber was a regular customer and that the July 12 robber was not. Jungwirth's "inconsistency" was that she did not mention noticing age spots on the first robber's face, and Corbin's was that she did not tell the FBI that she had seen the first robber enter the bank. Even if the jury had viewed these inconsistencies as significant, the evidence overwhelmingly pointed to the defendant's guilt. Johnson was photographed by the bank surveillance camera and was identified as the person in those photographs. His fingerprint was found on the demand note presented at the July 8 robbery. Thus, refusal to give the requested instruction was at most harmless error.
 
 
 24
 For the foregoing reasons, this court AFFIRMS the convictions.