**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-10379
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MAHMMADU ZZAMAN KHAN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(No. 3:00-CR-242-2)
_____

April 11, 2002

Before ALDISERT,[*] DAVIS and PARKER, Circuit Judges.

PER CURIAM:[**]

Defendant Mahmmadu Zzaman Khan appeals his conviction on
nine counts of making a false statement to a federal agency in
violation of 18 U.S.C. § 1001 and for a single count of
conspiracy to violate the same. He also appeals the district

---

[*] Circuit Judge of the Third Circuit, sitting by
designation.

[**] Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

court's determination that certain other false statements were relevant conduct and its calculation of loss under the sentencing guidelines.  We affirm in all respects.

## BACKGROUND

This case arises from Khan's attempt to secure several loans from the Small Business Administration through the Money Store, a private lender.  Khan's brother, Shahidu, supposedly wanted to purchase Khan's business, Dollar Auto Service and Body Shop.  To do so, he applied for an S.B.A.-backed loan through the Money Store.  In order to qualify, Shahidu offered a tax return and certain records from his own business, Frank Equipment & Tools. The tax return showed his income from the previous year was approximately $70,000; the business records were two invoices showing amounts due for equipment purchased by Dollar Auto and six checks showing cash Shahidu had paid into Frank Equipment. The application was approved, and the funds were wired to Frank Equipment.

Unbeknownst to the Money Store and the S.B.A., Khan had previously asked one of his employees, Frank Acala, to set up a bank account in the name of Frank Equipment & Tools.  He also had Acala arrange a mail drop for the new company.  At trial, Acala testified that Frank Equipment existed only on paper; that the company never received any cash infusions from Khan's brother; and that no invoices were paid by Dollar Auto.  (Shahidu's real

tax return showed that he had made only $48 that year.)  After the funds arrived from the S.B.A. loan, Khan several times asked Acala to write him checks drawn on the Frank Equipment account. From the loan proceeds, Khan used $130,000 to purchase a filling station.

Enter Jose and Juan Villanueva.  The Villanueva brothers wanted to purchase the filling station from Khan, but first they needed money.  Jose went to the Money Store and secured an S.B.A. loan for $260,000.  It is not clear what Jose had to do to get the proceeds, but once he did, he handed them over to Kahn.  Kahn kept the filling station.

Then, roughly a year after Shahidu allegedly applied for the first loan, Khan himself applied for a loan through the Money Store.  He requested $390,000, but the loan was refused, the Money Store having been informed that Khan was under investigation for fraud.  The government contends that six falsified tax returns were submitted in support of the loan application.

Khan was indicted on nine counts of making a false statement to a federal agency, 18 U.S.C. § 1001 (False Claims Act), and on one count of conspiracy.  At trial, the district court instructed the jury that it had to find that Khan specifically intended to mislead a federal agency.  The jury convicted him on all 10 counts.  In addition to the conspiracy conviction, Khan received a separate conviction for each of the false documents (nine in

-3-

all) submitted by his brother in applying for the first loan. The district court determined that Khan's criminal history category was I, and the probation office recommended an eight-level enhancement for loss of more than $200,000 but not more than $350,000. The P.S.R. concluded that the other loans involved different conspirators and different businesses and were therefore not related conduct under the sentencing guidelines. The government objected, urging the district court to include the loss amounts from the other two loans. The district court did, and Khan was sentenced to 37 months' imprisonment, the longest term for someone of Khan's category and offense level (19).

## I.

Khan failed to move for a judgment of acquittal at the close of evidence. As a result, we must uphold Khan's conviction absent "a manifest miscarriage of justice." *See United States v. Laury*, 49 F.3d 145, 151 (5th Cir. 1995). That standard is met when "the record is devoid of evidence pointing to guilt, or the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* (internal quotation omitted). It is apparent that the district court erroneously instructed the jury that conviction under the False Claims Act requires the government to prove that the defendant by his false statement intended to mislead a government agency. Such a showing is not required. *See United States v. Yermain*, 468 U.S. 63, 68-70

(1984).  The government failed to object to the court's charging it with this additional burden, which made the erroneous instruction the law of the case.  *See United States v. Jokel*, 969 F.2d 132, 136 (5th Cir. 1992).  Nevertheless, the government's failing to prove a nonessential element cannot result in a manifest miscarriage of justice.  As we noted above, to set aside a conviction under that standard there must be a paucity of evidence on a key element.  An element not described in the statute of which the defendant is accused of violating cannot by definition be a key one.

## II.

Under the sentencing guidelines, "relevant conduct" is defined as "all acts and omissions . . . that occurred during the commission of the offense of conviction [or] in preparation for that offense . . . and were part of the same course of conduct or common scheme or plan as the offense of the conviction."  U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 1B1.3(a)(1)&(2)(2001).  Whether two or more offenses are part of the same course of conduct turns on "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  *Id.* § 1B1.3 cmt. n.9(A).  Similarly, multiple offenses that are part of a common scheme or plan are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common

-5-

purpose, or similar *modus operandi*." We review the district court's determination of relevant conduct for clear error. *See United States v. Anderson*, 174 F.3d 515, 526 (5th Cir. 1999).

We discern no reversible error in the district court's determination of relevant conduct. The time between the first loan application and the last was 13 months. All three loans used the same modus operandi: applying for an S.B.A.-backed loan through the Money Store using false income tax returns and other falsified documents. In each case, the victims were the same, the Money Store and the S.B.A. And the proceeds of each loan were intended to or did make their way into Khan's hands, even if Khan was not himself the applicant to all of them.

Khan makes much of this court's opinions in *United States v. Ford*, 996 F.2d 83 (5th Cir. 1993), and *United States v. Garcia*, 962 F.2d 479 (5th Cir. 1992). In those two cases we were concerned with whether defendants' having been sentenced for prior offenses made them career offenders under the sentencing guidelines, which requires that separate sentences for "related offenses" be treated as one. *See generally* U.S.S.G. § 4A1.2(a). To determine whether a prior offense is related or not, the commentary directs the sentencing court back to § 1B1.3(a), which gives the definition for "relevant conduct." *See id.* § 4A1.2 cmt. n.1. Thus, an offense that subjects a defendant to being sentenced as a career offender cannot also subject him to an

enhancement for its being part of the "same course of conduct or a common scheme or plan as the offense of conviction." This is the teaching of our recent opinion in *United States v. Cade*, 279 F.3d 265 (5th Cir. 2002).

But we need not try to square our conclusion that the sentences in *Ford* and *Garcia* did not arise from related conduct with ours that the three fraudulent loans in this case did. In both of those cases, this court reviewed the district court's determination of relatedness de novo, a practice that the Supreme Court has since rejected as one for which the courts of appeal are not well positioned. *See Buford v. United States*, 121 S. Ct. 1276, 1280 (2001). Thus, even if we disagree with the district court's determination regarding relatedness, the court cannot reverse unless it was clear error. For the reasons stated above, the facts in this case do not support such a conclusion. Second, possible inconsistency between this court's construction of the term "related offense" under § 4A1.2(a) in *Ford* and *Garcia* and our construction of "relevant conduct" under § 1B1.3(b) does not prevent us from affirming the district court's finding of relatedness now, for § 4A1.2(a) did not tie the meaning of its term to § 1B1.3(b) until after those cases were decided. *See* U.S.S.G. app. C, amendment 493 (effective Nov. 1, 1993); *see also Garcia*, 962 F.2d at 481-82 (noting that the guidelines do not define "common scheme or plan" for purposes of § 4A1.2(a)).

Khan failed to object to the district court's calculation of loss under the sentencing guidelines.  We must therefore uphold the district court's determination unless plain error is evident. *See United States v. Chung*, 261 F.3d 536, 539 (5th Cir. 2001). The face value of the loans was $996,000; the actual loss suffered by the victims was $506,203.  For sentencing purposes, counting intended loss resulted in a one-level increase, which in turn had the effect of raising Khan's term of imprisonment by up to four months.

According to the application notes to the guideline under which Khan was sentenced, "[i]n fraudulent loan application cases[,] . . . . the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan."  U.S.S.G. § 2F1.1 cmt. n.8(b)(2000), *consolidated at* U.S.S.G. § 2B1.1 cmt. n.2 (2001). The same application notes also state that in some cases actual loss "will tend not to reflect adequately the risk of loss created by the defendant's conduct." *Id.*  Here, as noted before, Khan sought but was not approved for the third loan, whose face value was $350,000.  Not counting this amount as loss would have the effect of understating the seriousness of Khan's conduct. Furthermore, the reason there was no actual loss on the third

loan was that the Money Store had learned that Khan was suspected of making other bad loans, not because that Khan had done some salutary act. *Cf. id.* Finally, there being no findings regarding the value of any collateral Khan might have pledged in support of the third loan, we have no way of evaluating whether Khan could not have intended to convert the full amount, as he now argues. For these reasons, we discern no plain error in the district court's counting the full $350,000.

## CONCLUSION

Khan's convictions and sentence are AFFIRMED.