IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-30520

UNITED STATES,

Plaintiff-Appellee,

v.

THOMAS RAY BURTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-CR-50098-01

Before KING, STEWART, and PRADO, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Thomas Ray Burton appeals his conviction for possession with intent to distribute fifty or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Finding no reversible error, we affirm.

I.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

On April 19, 2006, Officer Chasen Swan with the Bossier City Police Department, working undercover, arranged to buy drugs from Barbara Jackson. Jackson did not have methamphetamine with her, but agreed to meet Swan later. The police followed Jackson to a storage facility with an attached apartment. A motorcycle and pickup truck were parked outside the apartment; both were registered to Burton. After leaving the apartment, Jackson went home, called Swan and sold him 2.1 grams of methamphetamine. On April 26, 2006, Swan purchased one gram of methamphetamine from Jackson. On April 27, 2006, Swan went to Jackson's residence to purchase drugs. Burton's motorcycle was parked outside Jackson's house, and she would not sell drugs to Swan while the motorcycle was parked there. After the motorcycle left, Jackson called Swan and agreed to sell him one gram of methamphetamine.

On May 10, 2006, an officer drove by the Red Roof Inn in Bossier City and noticed Burton's motorcycle and Jackson's vehicle parked outside. The motel was placed under surveillance, and Jackson and Burton were observed leaving the motel together. After going to a casino and two fast food restaurants, Jackson dropped Burton off at the motel and returned to her residence. Burton left the motel, went by himself to Red Lobster on his motorcycle, and then returned to the motel.

Later that day, the Bossier City Police obtained and executed a search warrant on room #102 of the Red River Inn, registered to Jackson. The search warrant indicated Swan's belief that Jackson was present in the motel with methamphetamine. At the time the search warrant was executed, Burton was the only person in the room. Methamphetamine and $17,262 were found in a bag on the counter in the bathroom, as well as three glass pipes for smoking methamphetamine, a digital scale, small plastic bags, and syringes. Three firearms were also found in the hotel room. When confronted with the guns and narcotics, Burton stated that everything in the room was his. Burton also stated

that he had left the guns, money, and methamphetamine in the saddlebags on his motorcycle when he went to the Red Lobster. Burton told Swan that he and Jackson had obtained the drugs in Dallas.[1]

On May 24, 2006, Burton was indicted on five counts: Count One, possession with intent to distribute fifty or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count Two, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); Count Three, possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and two forfeiture counts.

Burton proceeded to trial. In his defense, Burton presented several witnesses who had worked with him or were related to him and who testified that Burton was a reliable worker and that he avoided contact with guns because of his prior conviction. Burton himself testified that the reason he told the officers that the guns, drugs, and money belonged to him was because he wanted to protect Jackson since he was romantically involved with her. On the stand, he admitted that he committed perjury at an earlier suppression hearing when he testified that he never told the officers the items were his. He also testified that he did not know Jackson was involved with methamphetamine.

During the course of the trial, Burton attempted to introduce several handwritten letters that he had received while he was in jail from Jackson in an effort to show that she had manipulated him into confessing. In the first letter, Jackson says that she misses Burton and that he is the one for her. In the second letter, Jackson again professes her love for Burton and also says that Burton should be getting a letter from the clerk of court. Jackson tells Burton that "it is going to help us out," but "you don't have to go along with it if you don't want." The third letter contained the most possibly exculpatory

---

[1] Jackson, who is currently a fugitive, was subsequently arrested at her house. During a search of her home, the police found methamphetamine and drug paraphernalia.

statements. In it, Jackson says, "Sorry about the other day, I wasn't myself, didn't want to get you in trouble." Jackson continues, "It makes me feel like shit to even think that there was [a warrant out for me] and for you to have gotten in trouble cause of me." She also again expresses her love for Burton. The Government objected to the admission of the letters on the basis of hearsay, and the district court sustained the objection in part. In sustaining the objection, the court stated that "if the verbatim parts of the letter are read, how will the jury know that it's not being offered for the truth." The court permitted Mr. Burton to testify to the letters and to their effect on him, but did not allow him to read from the letters or present the letters themselves to the jury.

On February 7, 2007, after three days of trial, the jury found Burton guilty of Counts One, Two, and Three. Burton was sentenced to 300 months imprisonment. He timely appealed.

II.

Burton first argues that the district court erred in refusing to permit the jury to review the contents of three letters sent to Burton by Jackson. This Court reviews the district court's decision to admit or exclude evidence for abuse of discretion. Triple Tee Golf, Inc. v. Nike, Inc., 485 F.3d 253, 265 (5th Cir. 2007). If an abuse of discretion has occurred, we apply the harmless error doctrine to determine if a substantial right of the complaining party was affected. Id.

We do not believe that the district court erred in failing to allow Burton to submit the actual letters to the jury. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Burton argues that the statements were not offered for the truth of the matter asserted, that is, they were not offered to prove that Jackson apologized for getting him in trouble or that the drugs and guns were Jackson's, not his. Burton further

contends that the letters were offered to show his state of mind after receiving the letters; namely that he still believed that Jackson loved him. However, regardless of the purposes for which the statements were offered, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. The prejudice inquiry asks whether "the jury [was] likely to consider the statement for the truth of what was stated with significant resultant prejudice." United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994). Here, there was considerable danger that the jury would consider Jackson's statements about getting Burton "in trouble" for the truth and hence as evidence of his innocence. Given these concerns, we cannot say the district court abused its broad discretion in refusing to permit the actual letters to be submitted to the jury.[2]

Nonetheless, even if the district court erred in excluding the letters, any error was harmless. For an error to require reversal, the exclusion of the evidence in question must have substantially prejudiced Burton's rights. United States v. Sanders, 343 F.3d 511, 519 (5th Cir. 2003). Error does not require a reversal if "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." United States v. Cornett, 195 F.3d 776, 785 (5th Cir. 1999). Here, Burton himself testified that he received letters from Jackson while he was in jail, that in those letters Jackson said she loved him and apologized for getting him in trouble, and that because of those letters he abided by his earlier confession. Regardless of the failure to allow the actual letters to be

---

[2] Burton also argues that even if the letters are hearsay, they fall within the Federal Rule of Evidence 803(3) exception for statements of a declarant's "then existing mental, emotional, or physical condition." FED. R. EVID. 803(3). However,"before a statement, otherwise hearsay, can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case." Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 279 (5th Cir. 1991). Jackson's state of mind is not at issue in this case; rather, it is Burton's state of mind that is relevant to the issue of whether or not his confession was false. Therefore, the district court did not abuse its discretion in excluding the letters under Rule 803(3).

introduced, the jury was made aware of Burton's argument and the content of the letters that supported his argument. In light of Burton's detailed testimony regarding the letters, the failure to admit the actual letters had little, if any, effect on the jury's verdict. See United States v. Faust, 850 F.2d 575, 586 (9th Cir. 1988) (holding that where defendant was permitted to testify about contents of letters and his state of mind, the admission of the letter would not likely have affected the verdict).

III.

Burton also argues that the evidence was insufficient to support his conviction for possession of methamphetamine with intent to distribute. Because Burton did not file a motion for acquittal at the close of evidence or after the Government presented its case, he failed to preserve the issue of sufficiency for appeal, and his sufficiency challenge is reviewed only for a manifest miscarriage of justice. United States v. Avants, 367 F.3d 433, 449 (5th Cir. 2004). A miscarriage of justice exists "only if the record is devoid of evidence pointing to guilt, or . . . the evidence on a key element of the offense was so tenuous that a conviction would be shocking." United States v. Laury, 49 F.3d 145, 151 (5th Cir. 1995).

To convict Burton of possession of methamphetamine with intent to distribute, the Government was required to prove that he (1) knowingly; (2) possessed methamphetamine; (3) with the intent to distribute it. See United States v. Martinez-Lugo, 411 F.3d 597, 599 n.1 (5th Cir. 2005). "Possession can be actual or constructive, joint among defendants, and established by direct or circumstantial evidence." United States v. Martinez, 190 F.3d 673, 676 (5th Cir. 1999).

Burton has not shown that his conviction resulted in a manifest miscarriage of justice. The evidence adduced by the Government, when viewed in light most favorable to the verdict, established that Burton was associated

with Jackson, a known drug dealer; that Jackson only sold Swan methamphetamine after visiting Burton; that Burton was present in a motel room with a large quantity of methamphetamine and drug paraphernalia; and that Burton confessed that the drugs, guns, and money were his. Burton gave inconsistent statements about his confession, and admitted to perjuring himself during the suppression hearing. Finally, the jury heard Burton himself explain that he confessed only because of his feelings for Jackson. The jury was entitled to draw its own conclusions regarding Burton's credibility and to either reject or accept his explanation for his confession. See, e.g., United States v. Torres, 212 F. App'x 361, 365 (5th Cir. 2007) ("The jury is free to choose among reasonable interpretations of evidence, and the evidence need not exclude all possibility of innocence."). Likewise, the jury was not required to believe the testimony of the defense witnesses.[3] In view of the evidence presented at trial, Burton has not shown that "the record is devoid of evidence pointing to guilt, or . . . the evidence on a key element of the offense was so tenuous that a conviction would be shocking." Laury, 49 F.3d at 151; see also Torres, 212 F. App'x at 366-67 (holding that presence of drugs, combined with possession of baggies and other drug paraphernalia, sufficient to support conviction for possession with intent to distribute).

## IV.

In conclusion, we find that the district court did not abuse its discretion in refusing to permit the jury to view the letters written by Jackson and that the evidence was sufficient to support Burton's conviction for possession with intent to distribute methamphetamine. As such, we AFFIRM his conviction.

---

[3] Burton also argues that because the investigation originally targeted Jackson, the evidence is insufficient to support his conviction. This argument is meritless; the fact that an investigation originally targeted one person does not prohibit the eventual indictment of another individual. Cf. United States v. Gutierrez, 343 F.3d 415, 420 (5th Cir. 2003) ("That the operation resulted in the indictment of persons not originally targets of the investigation does not establish improper government conduct.").