*236 PER CURIAM:
In this appeal of their respective criminal convictions, Appellants raise three issues. First, they argue that the district court improperly instructed the jury as to the Hobbs Act; second, they argue that they were improperly subjected to double jeopardy; and, third, they argue that, under the Supreme Court’s decision in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Hobbs Act is unconstitutional on its face, or as applied in this case, and that the evidence is insufficient to support a finding of “substantial effect” on commerce as they argue is required by Lopez. For the following reasons, we affirm the judgments of the district court.
FACTUAL BACKGROUND
Appellants/Defendants Gregory Lynn Miles and Gerald Jehoram Gustus (“Defendants”) were indicted for conspiracy, four counts of interference with interstate commerce by robbery, and four counts of firearm violations for their participation in a series of robberies occurring in Tarrant County, Texas over a two month period. These Tarrant County robberies involved three McDonald’s restaurants, a Taco Bueno restaurant, and a Colters’s Barbecue and Grill. Gustus alone was indicted for the robbery and firearm violation as to one of the five robberies involved. The following facts were introduced at trial concerning each of the robberies and are not disputed on appeal:
On October 18, 1991, shortly after 7:00 a.m., the Defendants entered a McDonald’s Mini-Mac on North Watson Road (“North Watson” store) in Arlington, Texas. At gunpoint, they removed approximately $1,500 from the restaurant’s safe. The Defendants were identified at trial as the robbers by the restaurant manager Jenette Johnson and another employee. Johnson also testified that the North Watson store is located near Highway 360, a highway which connects Interstate Highway 20 and Interstate Highway 35. She further testified that the restaurant is located one-half mile from the Six Flags Over Texas amusement park. According to Johnson, the store was closed for approximately one hour following the robbery.
On November 7, 1991, Gustus robbed a second McDonald’s located on East Division Street (“East Division” store) in Arlington, Texas. According to the testimony of a McDonald’s employee, Esmerelda Graciano, the store was robbed upon its opening at 6:00 a.m. by two men fitting the physical descriptions of the Defendants. Graciano testified that at least one of the assailants had a gun during the robbery. The government introduced into evidence a written confession from Gustus regarding all five of the robberies, including the robbery of the East Division store.[1]
On December 7, 1991, Defendants entered and robbed a third McDonald’s restaurant located in Euless, Texas (“Euless” store). The store manager, Regina Woodley, testified that the Defendants, whom she identified at trial, entered the restaurant shortly after it opened at 6:00 a.m. and, at gunpoint, took approximately $3,000. Woodley further testified that the store closed for a period of time following the robbery[2] and that the Euless store is located approximately five minutes from the Dallas/Fort Worth International Airport.
In connection with the three McDonald’s robberies, the government introduced the testimony of Richard Matson, the field purchasing manager for the Dallas and Oklahoma regions of McDonald’s. Matson testified that, at the time of the robberies, the North Watson and Euless stores were company-owned stores that purchased many of their ingredients and supplies from out-of-state locations. He also stated that the employee paychecks for the company stores are received from the McDonald’s headquarters in Chicago, Illinois, and that the stores send their money and receipts to the Chicago office.
*237 Matson testified that the East Division store was a franchise store at the time of its robbery and that franchise stores obtain their food from the same out-of-state vendors as the company stores. He also testified that the franchise stores send rent payments and service fees to the McDonald’s headquarters in Chicago.
On cross-examination, Matson stated that, to his knowledge, the robberies of the three McDonald’s restaurants in Tarrant County did not affect the shipment of goods from out of state to the distribution centers in Texas. He further admitted that the employee paychecks, which originated out of state, were not, to his knowledge, disrupted because of the robberies.
On November 22, 1991, Defendants entered a Colter’s Barbecue and Grill (“Arlington Colter’s”) shortly after 7:30 a.m. and removed approximately $1,300 at gunpoint from the restaurant safe. The robbery occurred during a food delivery prior to the restaurant’s opening. According to the testimony of the restaurant manager, Susan Brenner, the delivery driver and employees were detained in the restaurant cooler during the robbery. Brenner and another employee identified the Defendants as the perpetrators. Brenner also testified that the restaurant is located in Arlington, Texas, and that it is approximately one-half block from Interstate Highway 20.
Payton Cullum, a regional vice-president of Colter’s, testified that, at the time of the robbery, the Arlington Colter’s purchased many of its products from out-of-state suppliers in accordance with the company purchasing policy. Cullum also stated that Colter’s has catered at least one event out of state (in New York), even though its restaurants are located solely in Texas. He further testified that money received from sales at the Colter’s restaurants is used, in part, to purchase food and supplies from out-of-state vendors. Cullum testified that the money taken during the robbery of the Arlington Colter’s would have been used for such purchases.
On cross-examination, Cullum stated that the robbery of the Arlington Colter’s did not stop .the company from purchasing its products from out-of-state suppliers. Further, Cullum admitted that, because the restaurant opened on time, the robbery did not stop travelers on nearby Interstate Highway 20 from being able to eat at the Arlington Colter’s.
On November 26, 1991, Defendants entered a Taco Bueno (“Arlington Taco Bueno”) at 6:00 a.m. during a food delivery. At gunpoint, the Defendants removed approximately $1,200 from the restaurant’s safe. The store manager, Jon Brdecka, identified the Defendants 'as the robbers. Brdecka also testified that the restaurant was not yet open for business at the time of the robbery. According to Brdecka, he and the delivery driver were detained in the restaurant cooler for a short period of time during the robbery. Brdecka also testified that the restaurant is located on South Cooper in Arlington, Texas, approximately two miles from Interstate Highway 20. He also stated that the Arlington Taco Bueno serves people from out of state, that he has occasionally noticed out-of-state license plates in the parking lot, and that his paycheck is received from out of state.
John Dunion, the vice-president in charge of purchasing for the Black Eyed Pea restaurants, which owns Taco Bueno, testified that Taco Bueno restaurants are located in Texas and Oklahoma and that the restaurants purchase many of their food products from out-of-state vendors. Dunion testified that the Arlington Taco Bueno purchases its food from out-of-state vendors in accordance with the company guidelines. Additionally, he testified that the money from the Arlington Taco Bueno is deposited in a local bank and later wired to a New York bank and held in commercial paper. Dunion stated that money stolen from the Arlington Taco Bueno affected the amount wired from Texas to New York for that deposit. On cross-examination, Dunion testified that the robbery of the Taco Bueno did not change the out-of-state purchasing habits of the company.
PROCEDURAL BACKGROUND
The Defendants were first charged in an eleven-count indictment filed on April 7, *238 1992.[3] At the time of the first federal indictment, Defendants were in the custody of the State of Texas awaiting trial on state charges for other robberies.[4] The federal indictment charged them with conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951, four counts of interference with commerce by robbery in violation of 18 U.S.C. § 1951, and four counts of using and carrying a firearm during and in relation to the commission of a crime of violence in violation of 18 U.S.C. § 924(c).[5] The Defendants each initially agreed to plead guilty to three of the eleven counts in the indictment in exchange for dismissal of the remaining counts.[6] The plea agreements, however, were subsequently rejected by United States District Judge John McBryde as undermining the statutory purpose of sentencing,[7] and the Defendants’ case was set for trial. On the day the trial was to begin, the Defendants entered into a second plea agreement in which they each pleaded guilty to four of the eleven counts.[8] This plea agreement was accepted by Judge McBryde and the Defendants were sentenced accordingly.[9] On appeal, this Court reversed and remanded, finding that the district court had improperly participated in the plea negotiations. See United States v. Miles, 10 F.3d 1135 (5th Cir.1993).
Upon remand, the case was reassigned to United States District Judge Terry Means who quashed the original indictment without prejudice on May 24, 1994. Judge Means noted that the government failed to allege the requisite effect on interstate commerce, an essential element of a Hobbs Act violation under 18 U.S.C. § 1951..
The Defendants were reindicted on June 14, 1994, by a federal grand jury. At the time of this second indictment, Defendants were serving time in the state prison pursuant to state convictions for robbery and other offenses. Miles’s state sentence was fifty years.[10] Defendant Gustus’s state sentence subjected him to life imprisonment after serving a sentence of fifteen years.[11]
*239 The second federal indictment charged Defendants with the same counts and violations as the original indictment, with the exception that this later indictment included the wording “interstate commerce.”[12] The Defendants pleaded not guilty and were tried by a jury in the court of United States District Judge Eldon Mahon. During their trial, Defendants timely moved for dismissal of their charges on the grounds that the use of a de minimis standard for determining an effect on commerce was unconstitutional and that the government failed to show a substantial effect on interstate commerce as required by the Hobbs Act and the Fifth Circuit’s decision in United States v. Lopez, 2 F.3d 1342 (5th Cir.1993), aff'd, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).[13] Defendants’ motions were denied. The Defendants were convicted on all counts and sentenced as follows:
Miles was sentenced on the federal convictions to a total of 858 months (approximately seventy-two years). Of the total sentence, seventy-eight months are to run concurrently to the state sentence that Miles is currently serving in Texas, and the remaining 780 months are to run consecutively to the state sentence. Gustus was sentenced to a total of 1,140 months (approximately ninety-five years). Of Gustus’s total sentence, 120 months are to run concurrently with the state sentences that Gustus is currently serving in Texas, and the remaining 1,020 months are to run consecutively to Gustus’s state sentences.
The Defendants filed timely notices of appeal.
DISCUSSION
Miles and Gustus raise three issues on appeal. We will address each issue in turn.
I.

Gaudin Error

Miles and Gustus first argue that the district court erred by instructing the jury incorrectly on the elements of a Hobbs Act offense, 18 U.S.C. § 1951.[14] Holding that Defendants’ argument is foreclosed by United States v. Parker, 104 F.3d 72 (5th Cir.1997) (en banc), cert. denied,—U.S.-, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997), we find no error.
In relevant part, the district court instructed the jury as follows:
If you believe beyond a reasonable doubt the government’s evidence regarding interstate commerce, to wit, that McDonald’s, Colters, and Taco Bueno bought and sold merchandise that had traveled from another state to Texas, or that the robberies affected sales by the stores of such merchandise, or that the money proceeds from these stores moved in interstate commerce, or that these stores served customers who travel in interstate commerce, then you are instructed as a matter of law that there was an effect on interstate commerce ....
*240 Miles and Gustus argue that the district court’s instruction impermissibly reserved for itself the question of whether the alleged acts of the Defendants affected interstate commerce. Specifically, Miles and Gustus argue that the district court’s instruction does not comport with the Supreme Court’s holding in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), which held that the Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.
Subsequent to the submission of Defendants’ briefs, this Court decided United States v. Parker, a case which is, as to the form of the jury instruction, virtually indistinguishable from the case at bar. In the Parker case, this Court considered, under the Supreme Court’s ruling in Gaudin, whether the district court had erred by reserving for itself the question of whether Parker’s alleged acts affected interstate commerce. In affirming the district court’s instruction, we held that “the trial court committed no Gaudin-type error.” Parker, 104 F.3d at 73.
The complaint of Miles and Gustus in the instant case is identical to the complaint of the defendant in Parker. Under the doctrine of stare decisis, we are bound to adhere to Parker’s earlier holding. See, e.g., United States v. Arce, 118 F.3d 335, 338 (5th Cir.1997). In so doing, we hold that the district court committed no Gaudin-type error.
II.

Double Jeopardy

Miles and Gustus argue that they were unconstitutionally subjected to double jeopardy when they were tried and convicted under both the Hobbs Act and 18 U.S.C. § 924(c) (using or carrying a firearm in relation to a crime of violence). They contend that under the test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), these two convictions violate the double jeopardy prohibition.[15] Like the preceding issue, however, the law is settled in this Circuit. Defendants have no double jeopardy claim.
In United States v. Parker, 73 F.3d 48, 55 (5th Cir.1996), aff'd, 104 F.3d 72 (5th Cir.1997), cert. denied,—U.S.-, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997), we also examined this same issue and held as follows:
This Circuit has acknowledged that the “same elements” test [of Blockburger ] still controls. United States v. Martinez, 28 F.3d 444, 446 (5th Cir.), cert. denied, 513 U.S. 910, 115 S.Ct. 281, 130 L.Ed.2d 197 (1994). Martinez case held that §§ 1951 and 924(c)(1) passed the Blockburger test because § 1951 requires proof of threats or force but not possession of a weapon, while § 924 requires proof that the defendant used or carried a weapon but not that the weapon was used for threat or force. Additionally, subsequent to Martinez this court again addressed the issue in United States v. Gonzales, 40 F.3d 735 (5th Cir.1994), cert. denied, 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995), holding that cumulative sentences imposed pursuant to § 924 are permissible because the legislature intended to authorize such punishments.
Parker, 73 F.3d at 55 (footnote omitted).[16] Finding that Defendants’ argument is foreclosed by Parker, we hold that the district court committed no error on this issue.
III.

Constitutionality of Hobbs Act and Sufficiency of Evidence in Light of Lopez

Finally, Miles and Gustus argue that, under the Supreme Court’s decision in Lopez, the Hobbs Act is both unconstitutional on its face and as applied in this case. They also argue that the evidence in this case is insufficient to support the finding of “substantial effect” on commerce, which the Defendants argue is required by Lopez.
*241 During the pendency of this appeal another panel of this Court decided United States v. Robinson, 119 F.3d 1205 (5th Cir.1997). In Robinson, this Court relied upon United States v. Bolton, 68 F.3d 396 (10th Cir.1995), cert. denied,—U.S.-, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996), which reasons that Lopez permits the application of federal law based on a de minimis nexus to interstate commerce, provided that the “statute regulates an activity which, through repetition, in aggregate has a substantial effect on interstate commerce.” Bolton, 68 F.3d at 399. Finding this reasoning unassailable, the panel in Robinson held:
under the third category of the commerce power described in Lopez, the particular conduct at issue in any given case need not have a substantial effect upon interstate commerce. Congress is free to act — and the government to apply the law — so long as the regulated activity, in the aggregate, could reasonably be sought to substantially effect interstate commerce.
Robinson, 119 F.3d at 1215.
The argument of Miles and Gustus in the instant case as to the effect of Lopez upon the Hobbs Act is almost identical to the contentions of the defendant in Robinson. Under the doctrine of stare decisis, we are bound by Robinson’s earlier holding. Accordingly, we AFFIRM the judgments of conviction and sentences of Gregory Lynn Miles and Gerald Jehoram Gustus.

. Defendant Miles was not indicted for this robbery or the firearm violation connected therewith.

. Ms. Woodley testified that the store “closed for a while” following the robbery. In response to the question of how long the store was closed because of the robbery, Woodley replied, "I don't recall how long."

. On July 1, 1992, the government filed a one-count information in addition to the original indictment as to Miles only. The count charged Miles with a felon in possession of a' firearm violation (18 U.S.C. § 922(g)) for a separate offense which occurred on November 26, 1991. This information count was later dismissed pursuant to Miles's second plea arrangement.

. See infra notes 11-12 (discussing the information available from the record on appeal regarding the Defendants' state convictions).

. Gustus was charged with an additional robbery count and firearm count.

. Miles agreed to plead guilty to the conspiracy to commit robbery count, one firearm violation count, and a charge of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). Gustus agreed to plead guilty to the conspiracy count and two firearm violation counts.

. Under the plea agreement, Miles would have been sentenced to approximately 204 months (17 years) and Gustus to approximately 480 months (40 years).

. Miles pleaded guilty to the conspiracy count and three firearm violation counts in exchange for dismissal of the remaining counts against him, including the one-count information added to the indictment. Gustus also pleaded guilty to the conspiracy and three firearm counts in exchange for dismissal of the remaining counts against him.

. Miles was sentenced to a total of 700 months (approximately 58 years) with a three-year term of supervised release on each count. Gustus was sentenced to a total of 750 months (approximately 63 years) with a three-year term of supervised release on each count.

. Miles was sentenced to 50 years for his participation in the December 18, 1991, aggravated robbery of a McDonald's in Cooke County, Texas. Also, when the presentence investigation report was prepared for federal sentencing, Miles was under indictment for aggravated robbery in Rockwall, Texas. Further, a motion to revoke Miles's 10-year probation sentence, previously received for another aggravated robbery conviction, was pending.

. Gustus was sentenced to 15 years for aggravated robbery and 35 years for aggravated sexual assault in connection with the January 16, 1991, robbery of a Dallas Burger King. Gustus was also sentenced to 50 years for aggravated robbery and 50 years for aggravated sexual assault in connection with the October 7, 1991 robbery of a second Burger King restaurant in Dallas. From the record it is unclear if the above convictions were to run concurrently or consecutively. Gustus was further sentenced to 35 years, to run concurrently with the previous convictions in Dallas, for the December 18, 1991, aggravated robbery of a Cooke County McDonald's. During the commission of the above mentioned offenses, Gustus was on probation for another aggravated robbery. Following the above convictions, Gustus's 10- *239 year probation sentence was revoked and he was sentenced to life imprisonment. His life imprisonment was to run consecutively to his 15-year sentence which he received previously for the January robbery of the Dallas Burger King.

.Defendants were charged with conspiracy to affect interstate commerce by robbery (count 1), four counts of affecting interstate commerce by robbery (counts 2, 6, 8, and 10) and four counts of knowingly carrying and using a firearm in relation to the commission of a crime of violence (counts 3, 7, 9, and 11). Gustus was also charged with an additional robbery (count 4) and firearm count (count 5). All of these counts used the same charging language. We note that in these counts the government did not use the statutory phrase "in any way or degree" in describing the effect on interstate commerce.

. The Defendants relied upon the Fifth Circuit's decision in Lopez because at the time of the trial, in late 1994, the U.S. Supreme Court’s decision affirming the Fifth Circuit's ruling had not yet been handed down.

. The Hobbs Act states, in relevant part:
Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
18 U.S.C. § 1951(a).

. Under Blockburger, each conviction must require proof of a fact or element that the other does not. Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.

. As to the double jeopardy issue, the original Parker panel's holding was affirmed and reinstated by the en banc panel. Parker, 104 F.3d at 73.