DeMOSS, Circuit Judge,
dissenting in part:
Hebert was sentenced to 2,581 months (215 years) in federal prison. Two-thirds of that term is attributable to Hebert’s conviction under the seven counts of violation of the Hobbs Act, 18 U.S.C. § 1951(a), and the companion counts for use of a firearm under 18 U.S.C. § 924(e). Because I continue to believe that the Hobbs Act is being unconstitutionally applied by the federal government in eases like this one where cash is robbed from local retail merchants, my conscience requires that I write now again to set forth the reasons particular to this case for my continuing dissent.[1]
I.
First of all, I have to register my fundamental disagreement with the strategy adopted by the Department of Justice and the federal prosecutors which has produced this conviction. Following passage of the Hobbs Act in 1945, there is no published opinion from the Supreme Court or any United States Circuit Court for twenty-three years which addresses the circumstance of interference with commerce by robbery under the Hobbs Act. This period of utter silence as to the applicability of the Hobbs Act to any type of robbery certainly under *526 cuts any argument that Congress intended to reach the type of robberies involved in this case. The first case to reach the Courts of Appeal using the Hobbs Act as a basis for prosecution of a robbery was United States v. Caci, 401 F.2d 664 (2d Cir.1968) (prosecution for conspiracy to commit robbery of hotel guest and armored car messenger), vacated, Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). The first case in the Fifth Circuit to use the Hobbs Act as the basis for a robbery prosecution was United States v. Pearson, 608 F.2d 695 (5th Cir.) (prosecution of a conspiracy to rob the safety deposit boxes of a hotel in which valuables of interstate travelers had been deposited), cert. denied, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). Thereafter, another nineteen years elapsed until United States v. Martinez, 28 F.3d 444 (5th Cir.), cert. denied, 513 U.S. 910, 115 S.Ct. 281, 130 L.Ed.2d 197 (1994), started a run of cases, all originating in the Northern District of Texas, in which armed robberies of local retail stores were prosecuted under the Hobbs Act and § 924(c). These later cases are: United States v. Davis, 30 F.3d 613 (5th Cir.1994), cert. denied, 513 U.S. 1098, 115 S.Ct. 769, 130 L.Ed.2d 666 (1995); United States v. Collins, 40 F.3d 95 (5th Cir.1994), cert. denied 514 U.S. 1121, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995); United States v. Gipson, 46 F.3d 472 (5th Cir.1995); United States v. Laury, 49 F.3d 145 (5th Cir.), cert. denied — U.S. -, 116 S.Ct. 162, 133 L.Ed.2d 105 (1995); United States v. Parker, 62 F.3d 714 (5th Cir.1995), opinion withdrawn and superseded on rehearing, 73 F.3d 48 (5th Cir.), rehearing en banc granted, 80 F.3d 1042 (5th Cir.1996), opinion reinstated in part, 104 F.3d 72 (5th Cir.), cert. denied — U.S. -, 117 S.Ct. 1720, 137 L.Ed.2d 842 (1997); United States v. Robinson, 119 F.3d 1205 (5th Cir.1997); and United States v. Miles, 122 F.3d 235 (5th Cir.1997). Martinez, Davis, Collins, Gipson, and Laury were all decided prior to the Supreme Court’s decision in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The defendants in these cases have been hit with humongous sentences as .a result of converting what has traditionally and legally been recognized as garden variety robberies under state law into violations of the Hobbs Act in order to bring to bear the draconian impacts on sentencing required by 18 U.S.C. § 924(c).[2] If the *527 Hobbs Act can be applied to all armed robberies which would otherwise have been prosecuted under state law, then the mandatory sentencing requirements of § 924(c) provide- prosecutors with the opportunity to put the perpetrators of several of such robberies away for what amounts to life, as has occurred here in Hebert’s case, even though the perpetrator had not previously been convicted of any crime, no shots were fired, and no victims sustained any physical injuries, and the sums of money taken in such robberies were less than $1,000. But if all armed robberies in the United States are to be prosecutable under the Hobbs Act there is a whole series of policy questions which in my view must be addressed by the Congress, as the legislative branch of our government, and not by the imaginative prosecutive theories of the executive branch nor by the lackadaisical decision making of the judicial branch. I have not been able to find anything in the U.S. Criminal Code which persuades me that the U.S. Congress has decided to make every armed robbery that occurs in the United States a federal offense and to appropriate the funds required to investigate, prosecute, determine guilt or innocence, sentence and incarcerate the greatly expanded numbers of federal criminal defendants which would result from that policy decision.
II.
The text of the Hobbs Act, as it now exists, reads as follows:
(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
The government prosecuted this case and the trial judge charged the jury on the theory that the Hobbs Act may be construed as if that statute read as follows:
Whoever unlawfully takes or obtains by force or violence or by intimidation any personal property or thing of value from the person or presence of another (the “victim”) when (i) such victim has at any time in the past bought anything of value from a seller in another state and (ii) such taking would deplete the assets of the victim so as to curtail in any way or degree the potential of such victim to make other purchases in the future from sellers in other states, shall be fined under this title or imprisoned not more than 20 years or both.
It is plainly obvious that the text of the Hobbs Act as it now exists in the U.S. Criminal Code does not say what the government claims it says. I have previously explained at considerable length why I believe nothing in the legislative history of the Hobbs Act, as it was passed 53 years ago, supports the expansive reading which the government contends applies in this case. Indeed,- the legislative history demonstrates that the Act was passed to address a very particular problem. Members of labor unions were hijacking produce trucks carrying produce into union states for the purpose of requiring that the non-union driver either pay a “tribute” in the form of a union wage or allow a union driver to transport the produce into the union dominated state. Thus, the Hobbs Act was passed to deal with robbery or extortion directed at goods moving in commerce. The legislative history simply does not support the government’s proposition that the Hobbs Act extends to prohibit purely local robberies. Likewise, I have written extensively as to why this expansive reading of the Hobbs Act is in clear and fundamental conflict with the teaching of the Supreme Court in its landmark decision United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). See Miles, 122 F.3d at 241-51 (5th Cir.1997) (DeMoss, J., specially concurring). I will not repeat all of those thoughts and comments here; but I think some points justify restatement because of their relevance to the issues raised in this case.
First, the Supreme Court has never held that the theory of “de minimis impact on interstate commerce” was sufficient to support the application of the Hobbs Act as asserted in this case. Secondly, the Supreme *528 Court has never held that the “depletion of assets theory” asserted by the government in this case was a proper way to measure an effect on interstate commerce. I recognize, of course, that these theories have been accepted as legitimate readings of the Hobbs Act by several of the Circuit Courts; but in my view the rationale supporting these theories is so flimsy that sooner or later the Supreme Court must grant a writ of certiora-ri to apply its teachings in Lopez to this strained reading of the Hobbs Act. In such event I predict that the Supreme Court will deliver the same fatal blow to the prosecutive theories in this case as it did in McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (reversing prosecutive theory that mail fraud and wire fraud statutes reach defrauding the citizens of a state of the intangible right to good government by officials) and as it did in Bailey v.. United States, — U.S. -, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (reversing prosecutive theory that the word “use” in 18 U.S.C. 924(c) meant the same thing as “possession”). In both McNally and Bailey the Supreme Court held that in construing criminal statutes we should apply the common, ordinary meaning of the plain text of the statute as being the conduct which Congress intended to prohibit and leave it to the Congress to broaden and expand the language by amendment to the statutory language.
III.
In testing the correctness of the government’s interpretation of the Hobbs Act in this case, I used the following premises as guidance:
1. The federal government does not have a general police power and, therefore, Congress cannot make a federal crime out of every robbery that occurs in the United States. See Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).
2. The sections of the U.S.Code which do make robbery a federal offense have been codified in Chapter 103 of Title 18 and define robbery as a federal offense in certain limited circumstances specified in each of §§ 2111 through 2119 of that chapter. The four bank robbery counts of the indictment against Hebert in the present case are based on § 2113 which make it a federal offense to rob a bank, savings and loan, or credit union if those entities are insured by an agency of the federal government. However, none of the other sections of Chapter 103 would make it a federal offense to rob a retail merchant of cash in his cash register.
3. The Hobbs Act, on the other hand, has been codified in another chapter of Title 18 of the U.S.Code, i.e. Chapter 95, entitled “Racketeering”; and § 1951, which contains the same language as originally passed by the Hobbs Act, is entitled “Interference With Commerce by Threats or Violence.”
4. The gravamen of the offense made criminal by the Hobbs Act (§ 1951(a)) is the obstructing, delaying, or affecting of commerce and the verbs used in the text — “obstructs, delays or affects” — are each in the present active tense.
5. Both the, term “commerce” and the term “robbery” are defined in the Hobbs Act and if we insert in subsection (a) of § 1951 the pertinent definitions, the text of subsection (a) would read as follows:
Whoever in any way or degree obstructs, delays or affects commerce [between any point in a state and any point outside thereof] or the movement of any article or commodity in commerce [between any point in a state and any point outside thereof] by [the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will or by means of actual or threatened force], shall be fined under this Title or imprisoned not more than- 20 years or both. (Portions in brackets inserted.)
6. It is apparent, therefore, (i) that grammatically and logically the conduct defined as robbery in the Hobbs Act must be the producing cause of a delay, obstruction or effect on commerce between a point in one state and a point in another state and (ii) that the delay, obstruction or effect produced must occur contemporaneously with the conduct which constitutes robbery.
The government’s interpretation of how the Hobbs Act should be read to support its application in this case makes several funda *529 mental changes in the plain language of the statute as passed by Congress. First of all, the government’s interpretation changes the gravamen of the offense from (i) “obstructing, delaying or affecting” commerce between a point in one state and a point in another state to (ii) .the taking or obtaining of personal property from the person or presence of another by means of actual or threatened force. In order to find some constitutional basis for this redefinition of the offense, the government’s interpretation purports to insert a definition of who the victim of the robbery conduct might be. It is important to note that in the text of the Hobbs Act as actually passed by Congress there is no definition of any kind as to the “person” from whose person or in whose presence the personal property is taken. Furthermore, the definition suggested by the government, i.e. a person who “has at any time in the past bought anything of value from a seller in another state” trivializes the connection with interstate commerce, which is the only constitutional power which could possibly support this statute, and is so open-ended that it would permit the federal government to prosecute almost every robbery that occurs in the United States,just as if the United States had been granted a general police power under the Constitution. Likewise, the “depletion of assets” theory which the government suggests as a rationale for establishing an effect on commerce trivializes the cause and effect relationship between the robbery and interstate commerce. That theory permits hypothetical, conjectural and conclusionary testimony about future events and effects, just as that offered in this case.
The depletion of assets theory is fraught with fallacies and suppositions. According to the dictionary the word “deplete” means “to decrease seriously or exhaust the abundance or supply of’ something. Webster’s College Dictionary 36B (1991). While it is certainly possible that the cash in the cash register of a retail merchant might constitute all of the assets of that merchant, that circumstance is so unlikely as to not be a reasonable inference absent specific proof of that circumstance. The assets of any business entity will consist of raw materials, goods in process, finished goods, manufacturing machinery, office equipment, display equipment, inventories of merchandise, account receivable, trucks and other rolling stock, bank accounts, and real property and improvements thereon. Ordinarily, the value of all of these assets will greatly exceed the amount of cash which the business keeps in its cash register. Furthermore, it is customary for businesses to carry insurance to protect all of its assets from loss — by fire, by windstorm, by burglary, by theft, or by robbery; and such insurance eventually replaces the value of an asset (but for deductibles) to the value that asset had before there was any loss. Consequently, to determine whether the impact of a robbery on the assets of a business were sufficient to actually constitute a “depletion of those assets” there would have to be proof of what the assets were before the robbery and what the assets were after the robbery and proof as to what insurance coverage was applicable. No such proof was offered by the government in this case and consequently the jury and the trial court could only speculate as to whether or not the robberies “depleted the assets” of the victims.
Likewise, the conclusional testimony in this case that the money taken in the robbery “would have been used” to purchase food and other commodities from another state cannot withstand rational analysis. Most businesses that make a lot of cash sales routinely limit the amount of cash in the cash registers by periodically transferring quantities of cash into safes located on the premises. From these on-premises safes, which can be opened only by specially authorized employees, the cash is regularly picked up and transmitted to a local bank where it produces a credit to the account of the retail merchant making the deposit and the cash itself becomes the property of the bank. It is this credit in its checking account that the retail merchant later draws on by check which is sent in payment of the bill from the out-of-state seller that ultimately produces payment for any out-of-state purchases. There is only one circumstance when the cash in a cash register on the merchant’s premises would be used to purchase goods from an out-of-state seller and that is when the retail merchant has ordered those goods to be delivered col *530 lect-on-delivery (COD). If the robbery occurred just before that COD delivery was to be made and the merchant then did not have the cash on hand to pay when the goods were delivered, then such out-of-state delivery and sale would have been “delayed, obstructed or affected” by the robbery. There was no testimony or proof whatsoever in this case that any such COD delivery was frustrated by the occurrence of the robbery. In fact, the majority opinion recognizes that none of the witnesses for the government “testified that the robberies caused them to forego, reduce or delay specific purchases from out of state.” Ante at 520.
In reality, therefore, the government’s theories of “de minimis effect on interstate commerce” resulting from “depletion of assets” and “frustration of potential future sales” are nothing but semantical camouflage intended to obscure the fact that the robberies in this case did not “obstruct, delay or affect” interstate commerce. For these reasons and for the additional reasons set forth in my dissent in Miles, I would hold that the Hobbs Act cannot be constitutionally applied to the robberies in this case and the convictions and sentences on those counts should be vacated and dismissed.
I respectfully dissent.

. This dissent is limited to Hebert's convictions under the Hobbs Act counts and the companion use of a gun counts. I concur as to his convictions under the bank robbery statutes and the use of a gun counts companion to the bank robbery counts.

. Martinez was convicted of five Hobbs Act counts and five companion use of a firearm counts. The opinion does not disclose his total . sentence nor the amounts taken from each local retail store involved; but under § 924(c) he would have been sentenced to 1,020 months (85 years) on the firearm counts alone. See Martinez, 28 F.3d at 445.
Davis was convicted of four Hobbs Act counts and two companion use of firearm counts. The opinion does not disclose the amounts taken in each retail store involved but he was sentenced to a total of 457 months (38 years) on all counts. See Davis, 30 F.3d at 615.
Collins was convicted of two Hobbs Act counts and two companion use of firearm counts. The opinion does not disclose the amounts taken in each robbery but he was sentenced to a total of 550 months (46 years) on all counts. See Collins, 40 F.3d at 98. On appeal, his conviction on one robbery count and its companion firearm count was reversed requiring resentencing.
Gipson was convicted of a conspiracy count, three Hobbs Act counts and three companion firearm counts. The opinion docs not disclose the amounts taken in each robbery but he was sentenced to a total of 750 months (62 years) on all counts. See Gipson, 46 F.3d at 473-74.
Laury was convicted on five Hobbs Act counts and five companion use of firearm counts. The opinion does not disclose the amounts taken in each robbery but Laury was sentenced to a total of 1,071 months (89 years) on all counts. See Laury, 49 F.3d at 148.
Parker was convicted of six Hobbs Act counts and two use of firearm counts and was sentenced to 430 months (36 years). His total take in the six robberies was less than $500. See Parker, 104 F.3d at 73 (DeMoss, L, dissenting).
Miles was convicted of four Hobbs Act counts and four use of a firearm counts and was sentenced to 859 months (71 years). The total take in the four robberies was $7,000. See Miles, 122 F.3d at 236-39.
Gustus was convicted of the same counts as Miles plus an additional Hobbs Act count and a use of gun count and was sentenced to 1,140 months (95 years). See id. at 236-39.
Robinson was convicted of three Hobbs Act counts and one use of a firearm count and was sentenced to 270 months (23 years). The total take in the three robberies was approximately $70,000. See Robinson, 119 F.3d 1209-19.
Hebert was convicted of seven Hobbs Act counts and seven companion use of firearm counts. His sentence attributable to these counts was 1,621 months and out of his total sentence of 2,581 months. His total take in the seven robberies was approximately $17,600 with four of the robberies involving takes of less than $1,000.