DeMOSS, Circuit Judge, specially
dissenting:
I join Judge Higginbotham’s dissenting opinion. He has heeded the mandate of the Supreme Court in Lopez, and has undertaken the arduous task of demarcating the “outer limits” of federal power, of distinguishing between “what is truly national and what is truly local.” United States v. Lopez, 514 U.S. 549, 566-68, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The interaction principle espoused in Judge Higginbotham’s opinion is a much needed step toward injecting some measure of rationality into that process.
I write separately, however, because the present debate over the Hobbs Act extends well beyond the issue of whether the robberies in this case may, as a conceptual matter, be aggregated as a class. Aggregation is an important aspect of this case, to be sure. But the truly determinative question, one which I fear may be lost in the abstract debate over aggregation, interaction, causal interdependence, and the like, is whether the conduct in this case “substantially affects interstate commerce.” It is that standard, after all, which is our constitutional touchstone, and which should ultimately control the outcome of this case. Id. at 560, 115 S.Ct. 1624.
In the past several years I have written at length as to why local robberies of the present sort do not “substantially affect interstate commerce.” United States v. *244 Hebert, 131 F.3d 514 (5th Cir.1997) (DeMoss, J., dissenting in part); United States v. Miles, 122 F.3d 235 (5th Cir.1997) (DeMoss, J., specially concurring). And the reasons I have offered bear repeating.
In determining whether a class of activities substantially affects interstate commerce, we of course look to the legislative record for evidence of congressional findings of such an effect. Judge Higginbotham states in his dissent that Congress did not identify the market it wished to protect by passing the Hobbs Act. United States v. Hickman, 179 F.3d 230 (5th Cir.1999) (Higginbotham, J., dissenting). But I beg to differ. The legislative history of the Hobbs Act is replete with evidence that Congress passed the statute to combat highway robberies by labor union members which, at the rate of more than 1,000 per day, were having a considerable impact on interstate commerce. Miles, 122 F.3d at 244 (DeMoss, J. dissenting). However, nothing in the legislative history of the Hobbs Act indicates that Congress was concerned with local robberies of retail establishments. There is absolutely no legislative history suggesting that retail robberies were having a substantial effect on interstate commerce. Consequently, there is simply no rational basis for concluding that Congress found that local robberies of retail stores, whether aggregated or not, have a substantial affect on interstate commerce.
In the absence of legislative history supporting the extension of the Hobbs Act to local robberies, we are left with the plain language of the statute. As I have explained in previous cases, it is clear from the wording of the statute that “commerce” refers to intercourse between the states. Hebert, 131 F.3d at 528-29; Miles, 122 F.3d at 245. Congress thus meant “commerce” in the ordinary sense, the flow of goods and people across state lines. It surely did not intend some metaphysical interpretation, where the taking of money from a cash register or attendant’s purse becomes magically transformed into an economic event that bears on our national commerce.
Thus, while I join Judge Higginbotham’s dissent, I reiterate my continuing belief that the applicability of the Hobbs Act should be determined with these more basic principles.